**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MARIAH LOPEZ,

                             Plaintiff,

                                                          1:24-cv-01516 (BKS/PJE)

v.

THE YWCA OF NORTHEAST NEW YORK, TAMARA
RAYNE aka TAMARA FLANDERS, KIMBERLY
SICILIANO, AHMED ALLOUSH, YUNIS ALLOUSH,
and JEAN DOE 1–20.

                                  Defendants.

_____

**Appearances:**

_Plaintiff Pro Se_
Mariah Lopez
Schenectady, NY

_For Defendants YWCA of Northeast New York, Tamara Rayne, and Kimberly Siciliano:_
Joseph J. DiPalma
Jackson Lewis P.C.
44 South Broadway, 14th Floor
White Plains, NY 10601

Defendant Pro Se
Yunis Alloush
Schenectady, NY

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

      The Clerk has sent to the Court for review an Amended Complaint filed by pro se

plaintiff Mariah Lopez alleging disability, race, religious, and gender discrimination and

asserting federal claims under, inter alia, 42 U.S.C. §§ 1983, 1985, the Fair Housing Act, the

Rehabilitation Act, the Americans with Disabilities Act, and other federal statutes, as well as

claims under the New York State Human Rights Law, New York State Real Property Law, and other New York State law provisions. (Dkt. No. 23). Plaintiff's claims arise out of her status as a client of Defendant YWCA of Northeastern New York's housing program, "Rosie's House." (*Id.*). Plaintiff has not paid the statutory filing fee and seeks leave to proceed in forma pauperis ("IFP"). (Dkt. No. 2).[1]

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-cv-1922, 2010 WL 5185047, at *1, 2010 U.S. Dist. LEXIS 134950, at *3 (S.D.N.Y. Oct. 26, 2010). Upon review of Plaintiff's IFP Application, the Court finds that Plaintiff has demonstrated sufficient economic need and Plaintiff's IFP Application (Dkt. No. 2) is granted.[2]

## III.    INITIAL REVIEW[3]

### A.    Governing Legal Standard

Having found that Plaintiff meets the financial criteria for commencing this action IFP, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28

---

[1] Plaintiff has also filed a request for a temporary restraining order ("TRO") prohibiting Defendants from evicting her from her residence, (*see* Dkt. No. 23; Dkt. No. 25; Dkt. No. 33; Dkt. No. 41; Dkt. No. 43), a motion for permission to file electronically via ECF, (Dkt. No. 7), a motion to disqualify defense counsel, (Dkt. No. 27), and a motion to appoint counsel, (Dkt. Nos. 46, 47). This Court will address Plaintiff's request for a TRO once Defendants have responded. United States Magistrate Judge Paul J. Evangelista will address Plaintiff's three other motions in due course.

[2] Defendant Yunis Alloush filed a letter asserting, inter alia, that Plaintiff's IFP application is "misleading, incomplete and possibly untruthful" based on a news article suggesting that in or about 2021, Plaintiff received a settlement "close to six figures." (Dkt. No. 22, at 2). Yunis Alloush's statement is unsworn and thus the Court declines to consider it at this stage. However, any Defendant is free to file a motion seeking revocation of Plaintiff's IFP status. *See Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IFP is a privilege provided for the benefit of indigent persons.") (quotation marks omitted); *see also, e.g., id.* (dismissing complaint upon finding the plaintiff deliberately concealed her finances and misrepresented on her IFP application to convey the impression that she could not pay the filing fee").

[3] The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). However, the courts have construed this section as making IFP status available to any litigant who can meet the governing financial criteria. *See, e.g., Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002). Thus, review of the Amended Complaint pursuant to §

U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Additionally, when reviewing a complaint, the Court may look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, No. 95-cv-0063, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

---

1915 is warranted in this case. Although the Local Rules contemplate initial review by the assigned magistrate judge, *see* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under [Section 1915] when an application to proceed in forma pauperis is filed."), in order to expedite the process and address Plaintiff's application for a TRO, the Court undertakes the initial review itself.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the Amended Complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

### B.    Summary of the Amended Complaint

The Amended Complaint asserts allegations of wrongdoing in connection with Plaintiff's housing through "Rosie's House," a housing program operated by Defendant YWCA. (*See generally* Dkt. No. 23). The following facts are set forth as alleged by Plaintiff in her Amended Complaint.

#### 1.    The Parties

"Plaintiff identifies as Afro-Latina, Transgender-woman." (Dkt. No. 23, ¶ 3). "Plaintiff is also legally disabled and receives monthly" Supplemental Security Income benefits. (*Id.* ¶ 5). Plaintiffs' medical conditions, which include "chronic acute pain," and "PTSD as a result of . . . abuse at the hands of law enforcement," which causes insomnia, depression, anxiety, and hypervigilance. (*Id.* ¶¶ 71,  96). Plaintiff is a "survivor of severe childhood abuse," "domestic violence," and human trafficking. (*Id.* ¶ 6).

Defendant YWCA of Northeast New York is "a non profit organization located in Schenectady, New York," that, "[h]istorically," has "served cisgender women and their families, specifically those who have experienced homelessness and or domestic abuse." (*Id.* ¶ 17).

Defendant Kimberly Siciliano, is the Chief Executive Officer of the YWCA and Defendant

Tamara Rayne (also known as Tamara Flanders) is Director of the YWCA Housing Program.

(*Id.* ¶¶ 15, 23, 32). The YWCA operates a housing program called Rosie's House,"[4] which "is

funded by grants or supervised by" the United States Department of Housing and Urban

Development ("HUD"), as well as by a "host of state-run agencies," including the New York

State Offices of Temporary Disability Assistance and Children and Family Services. (*Id.* ¶¶ 11–

12, 21).

Defendant Ahmed Khaled Alloush owns a number of properties in Schenectady,

including 121 Park Place, where Plaintiff currently resides. (*Id.* ¶ 41). Defendant Yunis Alloush

is Ahmed Alloush's son, and is the property manager for a number of Ahmed Alloush's

properties, including 121 Park Place. (*Id.* ¶ 46).

## 2.    Placement with Rosie's House – 3 Madison Street

"Plaintiff has a history of chronic homelessness" and in May 2023, she accepted a

placement with Rosie's House, a housing program operated by Defendant YWCA. (Dkt. No. 23,

¶ 11). Plaintiff "formally entered into the YWCA's housing program on May 15, 2023." (*Id.* ¶

95). "Plaintiff requested a number of reasonable accommodations to aid her daily activity while

she is enrolled in Rosie's House, including the need for a service dog, and an exemption to

certain policies," including the policy that relied "heavily on use of police (intervention)," and

prohibitions on "smoking" because she used cannabis "for relief of her symptoms" of PTSD and

"chronic acute pain." (*Id.* ¶¶ 13, 73, 95). At the time Plaintiff entered the housing program,

Siciliano and Rayne informed Plaintiff "that consumption of cannabis, especially for medical

---

[4] The Court notes that Defendant YWCA refers to the program as "Rosa's House," not "Rosie's House." (Dkt. No. 13, at 5).

reasons like PTSD was exempt from any prohibitions defining 'smoking' broadly in any paperwork she was asked to sign" and "that tobacco and illicit drugs were the targets of any anti-smoking information informed by the YWCA." (*Id.* ¶ 95).

In May 2023, Plaintiff "was placed" in an apartment at "3 Madison Street." (Dkt. No. 23, ¶ 54). Upon showing her the unit, Rayne "informed Plaintiff that the previous tenant had (also) been transgender." (*Id.* ¶ 53). Plaintiff subsequently learned "through records obtained from local landlord tenant court in Schenectady that the YWCA" had evicted the previous transgender client. (*Id.*).

Upon moving into the 3 Madison Street apartment, Plaintiff complained to the YWCA about: "black mold in the refrigerator"; a stove that gave her an "electric shock when she used it"; and a "filthy" carpet that began "to smell." (*Id.* ¶ 78). Plaintiff also complained to Rayne about a "neighbor's dog" that "occasionally escape[d] its owner's apartment to attack" Plaintiff and her two dogs. (*Id.* ¶ 79).

Rayne told Plaintiff that "she could expect maintenance staff from the YWCA to complete a number of basic tasks such as installing curtains inside her apartment as well as assemble a new bedframe for Plaintiff." (*Id.* ¶ 59). Plaintiff "maintains" that Rayne told the maintenance person that she was transgender and that the maintenance person did not "put any effort into assembling her bedframe and made excuses about being able [to] install the curtains." (*Id.* ¶ 60). Plaintiff called the YWCA staff "to complain—in front of the maintenance person that she felt that she was being treated unfairly—the maintenance person . . . refused to complete any further repairs and left." (*Id.* ¶ 62 (alleging that "[a]s a result" Plaintiff had "to sleep on the floor that night")).

Plaintiff then went to the YWCA campus, arriving "shortly after the maintenance person" arrived. (*Id.* ¶ 65). The maintenance person "was able to see" Plaintiff enter "an adjacent building" where "her therapist and program administrator Sarah Caterina was located." (*Id.*). At some point, the maintenance person called 911 and requested police assistance "because Plaintiff wouldn't return a set of tools which were left being in her unit." (*Id.* ¶¶ 66–67). A YWCA "staff person" also called the police or 911 "to allege there was an altercation and or a hostile person threatening staff." (*Id.* ¶ 68). Plaintiff immediately asked Caterina for "a reasonable accommodation," due to her PTSD, specifically, Plaintiff asked that she be exempt from a policy that relied on the use of police intervention. (*Id.* ¶ 73). Caterina agreed, told Plaintiff "not to worry about the police" and told Siciliano "over the phone" that Plaintiff was "safe" and that "the police should not be called or sent to [Caterina's] office." (*Id.* ¶ 74). Plaintiff, however "saw a police car outside and officers explained to her that someone reported she was refusing to return a set of tools." (*Id.* ¶ 75).

In March 2023, following a "heavy snowfall," Plaintiff slipped at 121 Park Place while walking her dogs. (*Id.* ¶ 99). Plaintiff asked Ahmed Alloush and Yunis Alloush to "clear up snow and ice which was preventing her from walking her dogs." (*Id.* ¶ 99).

On May 26, 2023, the YWCA maintenance person was "asked to deliver and carry a piece of furniture inside" Plaintiff's apartment. (*Id.* ¶ 77). "[A] number of female staff . . . surround[ed] the male maintenance person as if protecting him from Plaintiff." (*Id.*).

### 3.     Move from 3 Madison Street to 121 Park Place

The subcontractors that YWCA hired to move Plaintiff between apartments "destroy[ed] a number of her personal possessions," including "religious items" Plaintiff kept "at her door and keeping with her faith, an African base belief system known as Santeria." (Dkt. No. 23, ¶ 87).

The subcontractor who destroyed Plaintiff's "religious item" texted her after leaving, asking for her "Venmo" so the subcontractor could send Plaintiff funds. (*Id.* ¶ 90). Plaintiff refused. (*Id.*).

One subcontractor "made lewd remarks" to Plaintiff "while inside her apartment," and asked questions about "her history as a human trafficking survivor" and about whether she was "a stripper or sex worker." (*Id.* ¶ 88).

Plaintiff notified Siciliano and Rayne about the subcontractors' misconduct and destruction of property but "Defendants have refused to offer any good faith reimbursement" for her loss of property, "which Plaintiff estimated could cost $10–20k." (*Id.* ¶ 93).

Upon moving into 121 Park Place, Plaintiff reported to Defendants that there was "a huge hole in the bathroom wall, extremely poor water pressure, an outlet" with a "shortage or burn out," and "a rodent issue." (*Id.* ¶ 103 ("Plaintiff discovered mouse ruin and droppings inside her oven and pantry.")). "Most of the issues cited . . . have still not been addressed by the landlord a year after Plaintiff first moved in." (*Id.* ¶ 104). Plaintiff's "downstairs neighbor" at 121 Park Place "is elderly" and has "tinnitus which makes him sensitive to sounds and noise in his environment" and has also complained about the "conditions of the property" and "noise from previous tenants." (*Id.* ¶ 85).

"[N]ot long after moving into her new apartment at 121 Park Place," Yunis Alloush "visited her unit and told her she was not allowed to consume marijuana" inside the apartment. (*Id.* ¶ 97). "[M]ultiple other tenants who live there openly consume marijuana" but Plaintiff has not seen "defendant . . . complain[] to them about it or otherwise . . . enforce any no smoking policy." (*Id.*).

In "Spring of 2024 Plaintiff learned that 121 Park Place and her unit in particular lacked a valid rental certificate from Schenectady Code's Enforcement." (*Id.* ¶ 107). When Plaintiff informed Siciliano and Rayne "they denied that this was the case." (*Id.*).

"One day in the Spring of 2024," while Plaintiff was at the YWCA "to get a drink of water" and "to use the restroom," Plaintiff was "told through an intercom" that "Tami (Tamara [Rayne]) said you're not allowed here . . . I can't let you in, she doesn't want you here." (*Id.* ¶ 109). Plaintiff later learned that Defendants were claiming that "they hadn't targeted her" and that they had "implemented a brand new organization wide policy ending drop-in hours." (*Id.* ¶ 110).

In June 2024, following Plaintiff's complaint regarding the "lack of valid rental certificate," an inspection of her apartment was scheduled. (*Id.* ¶ 113). "On the morning of the inspection Defendant," citing a fear of Plaintiff's service dog, "ordered Plaintiff to place her service dog inside a room for the duration of the inspection (even though he knew the dog is friendly)." (*Id.* ¶ 114–15). "[S]everal days later codes enforcement officers rescheduled the inspection directly with Plaintiff." (*Id.* ¶ 116). As of the "summer of 2024," "codes enforcement was still refusing to issue a valid certificate of rental for [Plaintiff's] unit due to a number of violations which the landlord or owner need to address." (*Id.* ¶ 118).

During the summer of 2024, "plaintiff woke up to the sound of hissing, smoke and sparks coming from an outlet which her air conditioner was plugged into." (*Id.*). The electrician hired to replace the outlet attributed the "issue" to "poor upkeep of the property," as well as "moisture" from "a possible leak in the roof" and dust behind the wall. (*Id.* ¶ 119).

On a day the "[p]arties had been scheduled for an inspection from codes enforcement," Plaintiff "returned from walking her dogs" "a full ten minutes or so prior to the scheduled

inspection," to find Yunis Alloush inside her apartment "with what appeared to be his phone out." (*Id.* ¶¶ 121–22). When Plaintiff demanded to know why he was in the apartment, Yunis Alloush "responded in part by stating that 'I can do that . . . this is my house.'" (*Id.* ¶ 123).

In July 2024, Plaintiff initiated a lawsuit in Schenectady "against the defendants." (*Id.* ¶ 126). Plaintiff was thereafter approached by neighbors from "adjacent properties" owned by Ahmed Alloush and Yunis Alloush, who stated they felt "mistreated and neglected by the landlord." (*Id.* ¶ 126). One tenant, who gave Plaintiff a tour of her apartment, told Plaintiff "that a part of her bathroom ceiling had collapsed on her infant son." (*Id.* ¶ 138). "[N]one of these units or properties had been given proper rental certificates from city of Schenectady Code Enforcement." (*Id.* ¶ 128).

In June or July 2024, Defendants "forged and falsified a lease agreement relating to Plaintiff's move to 121 Park Place." (*Id.* ¶ 133).

Following Plaintiff's filing of the July 2024 lawsuit, Siciliano and Rayne used the "YWCA's Rule Violation 'system'" to issue two "infractions" to Plaintiff. (*Id.* ¶¶ 137–38). "[T]hree violations can be grounds for eviction from" the housing program." (*Id.* ¶ 137). One infraction alleged Plaintiff was rude and the other infraction alleged Plaintiff made "statements in public." (*Id.* ¶ 138). Upon inquiry, Plaintiff learned that "no appeal or grievance process exists for clients of the YWCA to challenge an infraction or rule violation." (*Id.*). Plaintiff secured a video "from a small business" showing that "the staff member in question had lied" and this "entirely exonerated" Plaintiff "from any alleged infraction." (*Id.* ¶ 139).

In "late summer early fall of 2024," Plaintiff reported a broken window to "Defendants the YWCA et al" and "asked them to hire a contractor to repair the work, since she did not feel comfortable alone with Yunis Alloush, but they refused for more than two months." (*Id.* ¶ 143).

Seeking "a buffer between her and" and Yunis and Zack Alloush, "Plaintiff made a formal request under the [ADA] for the YWCA to enact a policy which would help get a professional to address her window instead of Defendants Yunis and Zack Alloush." (*Id.* ¶ 147). "Plaintiff signed a release and provided the defendants access to written documentation from her mental health provider" in support of her request for a reasonable accommodation. (*Id.* ¶ 148). Rayne "communicated with Plaintiff's provider and shortly thereafter the YWCA's counsel" informed Plaintiff "that the request had been granted." (*Id.* ¶ 149). The YWCA's counsel also informed Plaintiff in writing that the [Alloush] defendants would not be contacting her or visiting her at her residence and that instead a contractor would be hired to conduct needed repairs." (*Id.* ¶ 150). Defendants "eventually hire[d] a contractor to do the work." (*Id.* ¶ 144).

Despite the reasonable accommodation that prohibited Yunis Alloush from contacting her "or visiting her residence," "one morning in November 2024," Yunis Alloush "show[ed] up to" Plaintiff's apartment and demanded "she give him access to assess and repair[]." (*Id.* ¶¶ 150, 152). "When Plaintiff refused to allow him access," Yunis Alloush filed a police report claiming that Plaintiff had harassed him, even though Plaintiff "was inside her own unit when he approached her unlawfully." (*Id.* ¶ 153). A "male companion" that Yunis Alloush "had brought with him" "verbally attack[ed]" Plaintiff, "stating among other things that Plaintiff is a 'man' trying to be 'a woman.'" (*Id.* ¶ 154).

### 4.    Eviction Proceedings

Yunis Alloush plans to "immediately evict the YWCA and its sub-tenant the Plaintiff . . . effective January 31, 2025." (Dkt. No. 23, ¶ 156). Neither the YWCA nor their counsel have told Plaintiff what her next placement will be. (*Id.* ¶ 157).

In "letters sent to the Plaintiff by Yunis Alloush," Alloush states that Plaintiff has "[a]ssaulted a municipal employee," and that "Plaintiff's service dog injured someone." (*Id.* ¶

159). "[A]nimal control for the city of Schenectady" has "no complaint or report on file of any allegations which involve plaintiff's service dog injuring anyone." (*Id.* ¶ 160).

On January 14 and 15, 2025, Plaintiff made a number of complaints to the YWCA and Rayne concerning "a plumbing issue in her unit." (*Id.* ¶ 166). Defendants sent contractors to Plaintiff's apartment to address the issue. (*Id.* ¶ 167). Afterward, "defendants" issued Plaintiff an "infraction for 'cussing' over the phone when trying to coordinate logistics about her toilet." (*Id.*).

In a January 13, 2025 email to a Schenectady probation officer, Rayne wrote:

> We will be offering her space in our Rapid Rehousing program. This is a program that offers 9-12 months of financial assistance paying for rent. She can choose her own apartment within a budget, and it can be in Schenectady, Albany, Troy, Saratoga and surrounding areas. Consideration can be given for apartments at more of a distance.

(*Id.* ¶ 175). Plaintiff has not been asked by the YWCA to move. (*Id.* ¶ 174). As of February 2024, Plaintiff has not received any infraction or "notice of rule violation[s]" from the YWCA. (*Id.* ¶ 81).

Construed liberally,[5] the Amended Complaint alleges the following claims against the named Defendants: (1) violation of constitutional rights under 42 U.S.C. § 1983; (2) conspiracy under 42 U.S.C. § 1985; (3) disability discrimination, failure to provide a reasonable accommodation, retaliation, and interference, in violation of the ADA and RHA; (4) disability, racial, religious, and sex-based discrimination, failure to provide a reasonable accommodation,

---

[5] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (reflecting that "[o]n occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings.").

and retaliation of the violation of the Fair Housing Act; (5) violation of the New York State

Constitution; (6) violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec.

Law § 290 et seq.; and (7) violation of the New York State Real Property Law and Article 7 of

the Real Property Actions and Proceedings Law. (Dkt. No. 23, ¶ 50). Plaintiff seeks

compensatory damages and injunctive relief. For a complete statement of Plaintiff's claims and

the facts she relies on in support of those claims, reference is made to the Amended Complaint.

(*See generally* Dkt. No. 23).

### C. Analysis

#### 1. 42 U.S.C. § 1983 and New York State Constitution

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of

action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537,

573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting

42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] .

. . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v.

James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808,

816 (1985)). Plaintiff also seeks to assert claims under the New York State Constitution. (Dkt.

No. 23, ¶ 50).

It is well-settled that a plaintiff alleging a violation of her constitutional rights under

Section 1983 or the New York State Constitution must show state action. *Fabrikant v. French*,

691 F.3d 193, 206 (2d Cir. 2012); *see also* 42 U.S.C. § 1983 (imposing liability on persons who

act "under color of any [state] statute, ordinance, regulation, custom, or usage"); *Hightower v.

United States*, 205 F. Supp. 2d 146, 154 n.4 (S.D.N.Y. 2002) ("Section 1983 and the New York

State Constitution only permit suits against state actors acting under color of state law."));

*Toomer v. Cellco P'ship*, No. 11-cv-7515, 2012 WL 2953831, at *9, 2012 U.S. Dist. LEXIS

101265, at *27–28 (S.D.N.Y. July 20, 2012) ("[A] constitutional tort may be brought against a

private actor under New York law only if that individual acted under color of law.").

      While private parties generally are not state actors, their conduct can be attributed to the

state for Section 1983 purposes if "(1) the State compelled the conduct [the 'compulsion test'],

(2) there is a sufficiently close nexus between the State and the private conduct [the 'joint action

test' or 'close nexus test'], or (3) the private conduct consisted of activity that has traditionally

been the exclusive prerogative of the state [the 'public function test']." *Hogan v. A.O. Fox Mem'l

Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (citing *Sybalski v. Indep. Grp. Home Living

Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). The "fundamental question" for each test is

whether the private party's conduct is "fairly attributable" to the state such that it bears

responsibility. *Fabrikant*, 691 F.3d at 207.

      Other than allegations that the YWCA and Rosie's House receive federal funding, (Dkt.

No. 23, ¶ 183), there are no other factual allegations connecting any named Defendant to the

state. *See Lagueux v. Bridgeport Hosp. Sch. of Nursing*, No. 11-cv-01933, 2013 WL 1310557, at

*4, 2013 U.S. Dist. LEXIS 43211, at *12 (D. Conn. Mar. 27, 2013) ("Although the complaint

contains references to federal funding received by one or more of the defendants, such funding

does not demonstrate that those defendants were state actors."). Accordingly, the Court dismisses

Plaintiff's § 1983 and New York State Constitution claims without prejudice pursuant to 28

U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be

granted.

### 2.    Conspiracy

      Plaintiff claims defendants conspired to "devise ways to deprive Plaintiff of her civil

right[s], including creating a hostile home/housing environment" and to evict her. (Dkt. No. 23,

¶¶ 30, 80). To maintain a civil rights conspiracy action under Section 1983 or Section 1985, a plaintiff, at a minimum, "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003); *see also Dorsey v. Fisher*, No. 09-CV-1011, 2009 WL 4985421, at *3, 2009 U.S. Dist. LEXIS 117126, at *6–7 (N.D.N.Y. Dec. 15, 2009).

Plaintiff does not allege any facts giving rise to a conspiracy, but instead makes conclusory statements that defendants conspired with each other. Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants.

Accordingly, the Court dismisses Plaintiff's conspiracy claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3.    ADA and Rehabilitation Act

"The ADA was enacted to 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (quoting 42 U.S.C. § 12101(b)(1)). "The ADA forbids discrimination against disabled individuals in [three] major areas of public life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). Title I prohibits disability discrimination in employment, 42 U.S.C. §§ 12111–12117; Title II prohibits discrimination in public services, programs, and activities of a public entity, 42 U.S.C. § 12132; and Title III prohibits discrimination in public accommodations, 42 U.S.C. § 12182(a).

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any covered program or

activity." 29 U.S.C. § 794(a). The Rehabilitation Act applies "only to programs receiving federal financial assistance" and, like Titles II and III of the ADA, prohibits discrimination against qualified individuals in the context of public services and public accommodations. *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004). Because the ADA and Rehabilitation Action "impose identical requirements," courts "consider these claims in tandem." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999); *see also Bowen v. Rubin*, 385 F. Supp. 2d 168, 179 (E.D.N.Y. 2005) (remarking that the "standards" for considering public accommodation claim under Title III of the ADA and the Rehabilitation Act "are essentially the same").[6]

### a.    Plaintiff is Proceeding Under Title III of the ADA

Plaintiff does not specify which provision of the ADA under which she seeks to proceed, but as the Amended Complaint does not contain any employment-related allegations and does not allege that any Defendant is a public entity, Titles I and II of the ADA are inapplicable. However, Plaintiff's allegations concerning the YWCA's provision of housing services via Rosie's House may be read to suggest that the YWCA is a public accommodation for purposes of a claim under Title III of the ADA (and the Rehabilitation Act). *See* 42 U.S.C. § 12181(7)(K) (proving that certain "private entities are considered public accommodations for purposes of" Title III, including "a homeless shelter, food bank . . . or other social service center establishment"); *see also Muzumala v. City of New York*, No. 22-cv-8423, 2023 WL 6604311, at *3, 2023 U.S. Dist. LEXIS 181555, at *7 (S.D.N.Y. Oct. 10, 2023) ("Private shelters qualify as public accommodations under Title III.").

---

[6] "Although the RA and the ADA are largely coextensive, the statutory text of the respective causation elements differ." *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 953 (2d Cir. 2024) (comparing 42 U.S.C. § 12182 ("on the basis of disability"), *with* 29 U.S.C. § 794(a) ("solely by reason of her or his disability").

###### b.        Claims Against Individual Defendants

To the extent the YWCA is a private entity providing a public accommodation, it is a proper defendant for Plaintiff's Title III, ADA claim and Rehabilitation Act claim. *See Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 215 (E.D.N.Y. 1999) (explaining liability may be imposed on those who "own," "lease," or "operate" places of public accommodation (citing 42 U.S.C. § 12182(a)). Plaintiff also names Siciliano, Rayne, Ahmed Alloush, and Yunis Alloush as Defendants. (Dkt. No. 23). There is no individual liability under Title I, Title II, or the retaliation provision of the ADA. *Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007); *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("[T]he retaliation provision of the ADA . . . cannot provide for individual liability."). Nor is there individual liability under the Rehabilitation Act. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). However, courts have noted that "the regulations implementing Title III provide that discrimination is prohibited by any 'private entity who owns, leases (or leases to), or operates a place of public accommodation,' and that 'private entity' means 'a person or entity other than a public entity.'" *Green v. DGG Properties Co.*, No. 11-cv-01989, 2013 WL 395484, at *13, 2013 U.S. Dist. LEXIS 13138, at *38–39 (D. Conn. Jan. 31, 2013) (internal citation omitted) (first quoting 28 C.F.R. § 36.201(a), and then quoting 28 C.F.R. § 36.104). "In determining whether an individual is a proper defendant under the ADA," courts have focused "the inquiry . . . on the issue of control, i.e., whether the named defendant 'operates' a place of public accommodation within the meaning of the ADA" and have interpreted "'[t]he term operate . . . as being in a position of authority and having the power and discretion to perform potentially discriminatory acts.'" *Bowen v. Rubin*, 385 F. Supp. 2d 168, 180 (E.D.N.Y. 2005) (quoting *Coddington*, 45 F. Supp. 2d at 215).

Here, the Amended Complaint's allegations regarding Siciliano and Rayne's control as CEO and housing director, respectively, are sufficient to require a response to Plaintiff's Title III ADA claims. *See Green*, 2013 WL 395484, at *13, 2013 U.S. Dist. LEXIS 13138, at *41 (finding it was "conceivable . . .that the executive vice president, the president, and the general manager of Waters Edge *might* be proper defendants" for purposes of Title III, ADA claim, if they exercised the requisite control over Water's Edge"). The Court, however, makes no determination as to whether these claims could withstand a dispositive motion.

The Amended Complaint fails to identify any basis for liability against Ahmed Alloush, who allegedly owns the apartments at issue in this case, or Yunis Alloush, the alleged property manager, under the Title III of ADA. Read liberally, the Amended Complaint alleges that the Alloush Defendants allegedly work with or contract with the YWCA to provide housing for Rosie's House, these allegations alone are insufficient to allege their rental units are a "public accommodation." *See, e.g.*, *Rappo v. 94-11 59th Ave. Corp.*, 2011 WL 5873025, at *2, 2011 U.S. Dist. LEXIS 133867, at *6 (E.D.N.Y. Nov. 21, 2011) (explaining that Title III of the ADA "does not apply to private residential complexes, even if the premises are used for publicly subsidized housing"); *Spavone v. Transitional Servs. of N.Y. Supportive Hous. Program*, No. 16-cv-1219, 2016 WL 2758269, at *7, 2016 U.S. Dist. LEXIS 63005, at *19–20 (E.D.N.Y. May 12, 2016) (finding that a publicly subsidized apartment provided by a non-profit mental health agency was not a place of public accommodation). Further, there is no basis for individual liability as to any Defendant in connection with Plaintiff's ADA retaliation or interference claims or any of Plaintiff's Rehabilitation Act claims. Accordingly, Plaintiff's Title III, ADA claims against Ahmed Alloush and Yunis Alloush are dismissed, Plaintiff's ADA retaliation and interference

claims against Siciliano and Rayne are dismissed, and Plaintiff's Rehabilitation Act claims against Sicilian, Rayne, Ahmed Alloush, and Yunis Alloush are dismissed.

### c.    Compensatory Damages and Injunctive Relief

To the extent the Amended Complaint seeks monetary damages in connection with Plaintiff's claim under Title III of the ADA, such claims are dismissed as damages are not an available remedy. *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief, however, is not available to private individuals under Title III of the ADA."). However, damages may be available for a violation of the Rehabilitation Act, "but only where there has been intentional discrimination." *Levine v. Project Renewal*, No. 24-cv-0616, 2024 WL 773722, at *4, 2024 U.S. Dist. LEXIS 32495, at *7 (S.D.N.Y. Feb. 26, 2024) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)). Thus, to the extent Plaintiff seeks compensatory damages under Title III of the ADA, such claims are dismissed and only Plaintiff's ADA claims for injunctive or declaratory relief against the YWCA may proceed. Plaintiff's monetary claims under the Rehabilitation Act may also proceed.

### d.    Disability Discrimination

"To establish a prima facie violation" under the ADA or Rehabilitation Act, "it must be shown that: (1) the plaintiff is a qualified individual with a disability; (2) the defendant is an 'entity subject to the [A]cts'; and (3) the plaintiff 'was denied the opportunity to participate in or benefit from ... services, programs, or activities' or was 'otherwise discriminated against' on the basis of disability." *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 953 (2d Cir. 2024) (quoting *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)).

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in [42 U.S.C. § 12102(3)])." 42

U.S.C. § 12102(1). "Substantially limits" means "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significant restriction as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition manner or duration under which the average person in the general population can perform that same major life activity." *Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*, No. 08-cv-1948, 2011 WL4526520, at *7, 2011 U.S. Dist. LEXIS 111534, at *20 (S.D.N.Y. Sept. 28, 2011) (quoting 29 C.F.R. § 163.2(j)(1)). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102.

Here, Plaintiff alleges that she suffers "chronic acute pain," and "PTSD as a result of . . . abuse at the hands of law enforcement," which causes insomnia, depression, anxiety, and hypervigilance, and that she is "received monthly SSI benefits." (Dkt. No. 23, ¶¶ 5, 71, 96). The Amended Complaint is silent as to how Plaintiff's impairments impact "major life activities" as defined by the ADA. Further, the receipt of disability benefits from the Social Security Administration does not necessarily "equate to a disability under the ADA." *Lopez v. City of Albany*, No. 19-cv-1072, 2019 WL 7944411, at *3, 2019 U.S. Dist. LEXIS 176375, at *10 (N.D.N.Y. Oct. 9, 2019) (citing *Robinson*, 859 F. Supp. 2d at 259), *report and recommendation adopted*, 2020 WL 401585, 2020 U.S. Dist. LEXIS 12469 (N.D.N.Y. Jan. 23, 2020). In an abundance of caution, the Court nonetheless concludes, Plaintiff has pleaded sufficient facts as to disability to survive initial review. The Court expresses no opinion as to whether these allegations are sufficient to withstand a dispositive motion.

Insofar as plaintiff seeks relief under Title III of the ADA against the YWCA, Siciliano, and Rayne, and under the Rehabilitation Act as to the YWCA, based on alleged disability discrimination, the Court finds that at this stage of the proceeding, the claims against these Defendants survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### e.     Reasonable Accommodation

To bring a reasonable accommodation claim, a plaintiff must show "(1) she suffers from a disability (2) known to the defendant, for which (3) a reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the defendant refused the accommodation." *Bell v. Fam. Dollar Store Jane*, No. 23-cv-5307, 2023 WL 5017167, at *2, 2023 U.S. Dist. LEXIS 138560, at *5 (S.D.N.Y. Aug. 7, 2023) (quoting *Lopez v. New York City Dep't of Homeless Servs.*, No. 17-cv-3014 2019 WL 3531955, at *4, 2019 U.S. Dist. LEXIS 129690, at *12 (S.D.N.Y. Aug. 2, 2019), *report and recommendation adopted*, 2019 WL 4593611, 2019 U.S. Dist. LEXIS 162222 (S.D.N.Y. Sept. 23, 2019)).

Plaintiff appears to maintain that she requested, as a reasonable accommodation, permission to use cannabis, to keep her service dog(s), to avoid unnecessary interaction with law enforcement, and contractors (in place of Yunis Alloush) to service her apartment. Although Plaintiff recounts one instance of Yunis Alloush telling her she could not smoke in her apartment, there are no allegations that Alloush enforced that prohibition after Plaintiff explained it was an accommodation provided to her by the YWCA. (Dkt. No. 23, ¶ 97). Nor are there any allegations that she was not allowed to keep her service dogs or that she was forced to interact with law enforcement, or that her request for contractors (while delayed) were denied. However, Plaintiff alleges that despite obtaining a reasonable accommodation from the YWCA, and being informed "in writing that" Yunis Alloush "would not be contacting her or visiting her residence

and that instead a contractor would be hired to conduct needed repairs," in November 2024,

Yunis Alloush appeared at Plaintiff's apartment "demanding she give him access" to do repairs.

(*Id.* ¶ 152). In an abundance of caution the Court concludes that a response by the YWCA,

Sicilian, and Rayne is required to Plaintiff's reasonable accommodation claim under Title III of

the ADA, and that a response by the YWCA is required as to Plaintiff's reasonable

accommodation claim under the Rehabilitation Act. The Court makes no determination whether

this claim can withstand a properly filed dispositive motion.

### f.    Retaliation and Interference

"Claims for retaliation [under the ADA] are analyzed under the same burden-shifting

framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d

Cir. 2002); *see Salas v. N.Y. City Dep't of Investigation*, 298 F. Supp. 3d 676, 685 (S.D.N.Y.

2018) (explaining that the ADA and Title VII contain "nearly identical language, and retaliation

claims under the two statutes are analyzed under the same framework") (citing *Lovejoy-Wilson v.*

*NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222–23 (2d Cir. 2001)). Thus, for a retaliation claim to

survive a motion to dismiss, the plaintiff must plausibly allege that: (1) "an adverse decision or

course of action was taken against plaintiff," *Weixel v. Bd. of Educ. of City of New York*, 287

F.3d 138, 148 (2d Cir. 2002), (2) because the plaintiff "opposed any act or practice" made

unlawful by the ADA, 42 U.S.C. § 12203(a); *see also Vega v. Hempstead Union Free Sch. Dist.*,

801 F.3d 72, 90 (2d Cir. 2015) (describing the elements necessary "for a retaliation claim to

survive a motion for judgment on the pleadings or a motion to dismiss"). The ADA's "anti-

interference provision," 42 U.S.C. § 12203(b), prohibits "coerc[ing], intimidat[ing],

threaten[ing], or interfer[ing with]" a person who has "exercised or enjoyed . . . any right granted

or protected by" the ADA. 42 U.S.C. § 12203(b). "Obtaining a reasonable accommodation on

account of a disability is a right granted or protected by the ADA." *Witcher v. New York City*

*Dep't of Educ.*, No. 23-465, 2024 WL 3220264, at *3, 2024 U.S. App. LEXIS 15768, at *7 (2d Cir. June 28, 2024) (citing 42 U.S.C. § 12112(b)(5)(A)).

Insofar as plaintiff seeks relief under the ADA and Rehabilitation Act against the YWCA based on alleged retaliation and interference, the Court finds that at this stage of the proceeding, the claims against the YWCA survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 4.    Fair Housing Act

Plaintiff alleges race, sex, religious, and disability-based discrimination in violation of the FHA and appears to advance theories of discrimination, failure to make a reasonable accommodation, hostile housing environment, and retaliation. The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race" or "sex." 42 U.S.C. § 3604(b). The FHA also makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of" the buyer or renter. 42 U.S.C. § 3604(f)(1). "For a plaintiff's claim to survive a motion to dismiss in a *McDonnell Douglas* case, he must plausibly allege that he '[1] is a member of a protected class, . . . [2] suffered an adverse . . . action, and [3] has at least minimal support for the proposition that the [housing provider] was motivated by discriminatory intent.'" *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

### a.    Claims against Individual Defendants

Plaintiff asserts FHA claims against all defendants. The Supreme Court has "noted that an action brought for compensation by a victim of housing discrimination is, in

effect, a tort action." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). "Thus, '[i]ndividual board members or agents such as property managers can be held liable when they have personally committed or contributed to a Fair Housing Act violation.'" *Higgins v. 120 Riverside Boulevard at Trump Place Condo.*, No. 21-cv-4203, 2022 WL 3920044, at *23, 2022 U.S. Dist. LEXIS 157466, at *77 (S.D.N.Y. Aug. 31, 2022) (quoting *Conn. Fair Housing Center v. Corelogic Rental Prop. Solutions, LLC*, 369 F. Supp. 3d 362, 375 (D. Conn. 2019)). Accordingly, the Court will consider the liability of each Defendant in addressing the viability of each of Plaintiff's FHA claims.

### b.  Discrimination

"To establish discrimination under . . . the [FHA] . . . plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (applying identical standard to FHA and ADA claims).

### i.  Disability Discrimination

For the reasons discussed above, see supra Part III.C.3., the Court finds Plaintiff's disability-based FHA claims against all Defendants require a response. The Court expresses no opinion as to whether these claims can withstand a dispositive motion.

### ii.  Racial Discrimination

Construed liberally, the Amended Complaint alleges that Defendants subjected her to racially hostile housing environment and are trying to evict her from her from 121 Park Place and Rosie's House because she is "Afro-Latina." (Dkt. No. 23, ¶ 3, 22, 47, 50). The Second Circuit has explained that "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the [defendant's] criticism of the plaintiff's . . . in ethnically degrading terms; or its invidious comments about others in the [the plaintiff's] protected group;

24

or the more favorable treatment of [individuals] not in the protected group; or the sequence of events leading to the [adverse action]." *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). "[A] plaintiff can survive a motion to dismiss if the plaintiff can allege facts that support a plausible claim that the plaintiff was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation.'" *Thompson v. CRF-Cluster Model Program, LLC*, No. 19-cv-1360, 2020 WL 4735300, at *10, 2020 U.S. Dist. LEXIS 147003, at *25 (S.D.N.Y. Aug. 14, 2020) (discussing allegations required to allege FHA disparate treatment claim) (quoting *Littlejohn*, 795 F.3d at 311 (2d Cir. 2015)). The Amended Complaint's allegations regarding race-based treatment are conclusory, (*see*, *e.g.*, Dkt. No. 23, ¶ alleging that "Defendant Yunis Alloush has repeatedly discriminated against plaintiff on the basis of[] her race")), and the Amended Complaint otherwise lacks any factual allegations that would allow a plausible inference of race-based discrimination. Accordingly, Plaintiff FHA's racial discrimination claims are dismissed with leave to amend.

### ii.     Religious Discrimination

Plaintiff alleges that the subcontractors the YWCA hired to move her to 121 Park Place destroyed "several valuable religious items which Plaintiff keeps at her door and keeping with her faith, an African based belief system known as Santeria." (Dkt. No. 23, ¶ 87). When Plaintiff notified Siciliano and Rayne about the destruction of her property, they "minimized these violations" because they did not recognize Plaintiff's religion as "on par with other major religions, such as Christianity, Islam, Buddhism, etc." (*Id.* ¶ 92). Even construed liberally, Plaintiff's conclusory allegation that Siciliano and Rayne did not recognize Plaintiff's religion as "on par with other major religions" does not allow a plausible inference of discriminatory intent

based on religion. Accordingly, Plaintiff's FHA claims based on religious discrimination are dismissed with leave to replead.

### iii.          Sex-Based Discrimination

"Upon showing [Plaintiff] the unit at Madison Street Defendant Tamara Rayne informed Plaintiff that the previous tenant had (also) been transgender." (Dkt. No. 23, ¶ 53). Plaintiff alleges that court record show that that the prior "transgender tenant" was evicted. (*Id.*). Plaintiff further alleges that during her move to 121 Park Place, the subcontractors hired by the YWCA asked her "questions as to her history as a human trafficking survivor, such as asking her if she is a stripper or sexworker." (*Id.* ¶ 88). Plaintiff alleges that a male companion Yunis Alloush brought with him in November 2024, stated "that Plaintiff is a 'man' trying to be 'a woman.'" (*Id.* ¶ 154).[7]

A plaintiff's hostile housing environment claim "must establish (1) she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) the defendant[ ] is responsible for the allegedly harassing conduct towards the plaintiff." *Smith v. Davis*, No. 5:22-cv-1202, 2024 WL 2126729, at *4, 2024 U.S. Dist. LEXIS 85604, at *11 (N.D.N.Y. May 13, 2024) (quoting *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019)).

In an abundance of caution, and while the allegedly overt harassing conduct appears to have been committed by third-parties, the Court finds that a response is required to Plaintiff's FHA, sex discrimination claim and hostile housing environment claim. *See United States v.*

---

[7] Plaintiff alleges that "Defendant Zack Alloush did sexually harass Plaintiff when he contacted her via cell phone and text message at inappropriate times including early hours of the morning and on holidays." (Dkt. No. 23, ¶ 131). However, Zack Alloush is not named as a Defendant in the caption of the Amended Complaint or in the section entitled "The Defendants" and his relationship to Plaintiff or her apartments is not articulated in the Amended Complaint.

*Hylton*, 590 F. App'x 13, 17 (2d Cir. 2014) (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)

("Though the FHA does not mention vicarious liability, 'it is well established that the Act

provides for vicarious liability' because 'when Congress creates a tort action, it legislates against

a legal background of ordinary tort-related vicarious liability rules and consequently intends its

legislation to incorporate those rules.'"). However, the Court makes no finding as to whether the

claim would survive a properly-supported motion to dismiss or motion for summary judgment.

### c.    Retaliation

As the standard applicable to a retaliation claim under the FHA is nearly identical to the

standard applicable to a retaliation claim under the ADA, *see Burris v. Hous. & Servs. Inc.*, No.

17-cv-9289, 2019 WL 1244494, at *8, 2019 U.S. Dist. LEXIS 43972, at *20 (S.D.N.Y. Mar. 18,

2019) (applying same standard to ADA, Rehabilitation Act, and FHA retaliation claims), for the

reasons stated supra Part III.C.3.f., the Court finds a response is required as to Plaintiff's

retaliation claim against all defendants. However, the Court makes no finding as to whether the

claim would survive a properly-supported motion to dismiss or motion for summary judgment.

### 5.    NYSHRL

### a.    Discrimination

The NYSHRL provides that it is unlawful discriminatory practice to refuse to (1) "sell,

rent, lease or otherwise to deny . . . any person or group of persons . . . a housing accommodation

because of the race . . . sexual orientation, gender identity or expression . . .[or] sex . . . of such

person or persons"; (2) "discriminate against any person because of race . . . sexual orientation,

gender identity or expression . . .[or] sex . . . in the terms, conditions or privileges of the sale,

rental or lease of any . . . housing accommodation"; or (3) "make any record or inquiry in

connection with the prospective purchase, rental or lease of . . . a housing accommodation which

expresses, directly or indirectly, any limitation, specification or discrimination as to race . . .

sexual orientation, gender identity or expression . . .[or] sex . . . or any intent to make any such limitation, specification or discrimination." N.Y. Exec. Law §§ 296(5)(a)(1)–(3), 296(5)(c)(2).

"Claims under the FHA and [NYS]HRL § 296 are evaluated under the same framework." *Francis*, 992 F.3d at 80 (2d Cir. 2021) (quoting *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 153 (2d Cir. 2014)).

For the reasons stated above, in Part III.4.b. of this Decision, the Court finds a response is required to Plaintiff's NYSHRL disability and sex-based discrimination claims pursuant to N.Y. Exec. Law § 296(5) against Defendants.

### b.     Retaliation

To state a claim for retaliation under the NYSHRL, "the plaintiff must, at the very least, allege that as a result of her engagement in protected activity, the defendant engaged in conduct that was reasonably likely to deter a person from engaging in the protected activity." *Rubin v. New York City Bd. of Educ.*, No. 20-cv-10208, 2023 WL 1972729, at *19, 2023 U.S. Dist. LEXIS 2832, at *51 (S.D.N.Y. Jan. 6, 2023) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).

For the reasons set forth above in Part III.C.3.f this Decision the Court finds that a response is required to Plaintiff's NYSHRL retaliation claims pursuant to N.Y. Exec. Law § 296(7) against Defendants.

### c.     Aiding and Abetting

Claims that individual defendants aided and abetted violations of NYSHRL, in violation of N.Y. Exec. L. § 296(6), are tied to the primary NYSHRL violation.

Out of an abundance of caution, mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see*, *e.g.*, *Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff  can withstand a properly filed motion to

dismiss or for summary judgment, the Court finds that a response is required to Plaintiffs' aiding

and abetting NYSHL disability and sex-based discrimination and retaliation claims against

Defendants. Plaintiff's race and religious-based aiding and abetting NYSHRL claims are

dismissed without prejudice to repleading.

### 6.    New York Real Property Law

Plaintiff  brings claims of retaliation and breach of implied warranty of habitability

against Defendants New York State Real Property Law, N.Y. Real Property Law § 223-b(5).

Section § 235–b "'provides an implied warranty of habitability in residential leases' which is a

condition to tenants' obligation to pay rent, and 'Section 223-b(5) creates a rebuttable

presumption of retaliatory intent if a landlord seeks to evict a tenant following the tenants

complaint that the landlord had violated health, safety or other specified laws.'" *Smith*, 2024 WL

2126729, at *4, 2023 U.S. Dist. LEXIS 2832, at *11–12 (first quoting *Szewczuk v. Stellar 117*

*Garth, LLC*, No. 09-cv-1570, 2012 WL 8141900, at *4, 2012 U.S. Dist. LEXIS 188143, at *12

(S.D.N.Y. Sept. 4, 2012), and then quoting *Avila v. 1212 Grant Realty*, LLC, No. 18-cv-7851,

2019 WL 4805333, *2 n.2, 2019 U.S. Dist. LEXIS 169557, at *6 n.2 (S.D.N.Y. Sept. 30, 2019)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a pro se

plaintiff's pleadings must be liberally construed, *see*, *e.g.*, *Sealed Plaintiff*, 537 F.3d at 191, and

without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to

dismiss or for summary judgment, the Court finds that a response is required to Plaintiff's New

York Real Property Law claim is required.

Plaintiff also appears to attempt to state a claim under Article 7 of the New York Property

Actions and Proceedings Law, which "permits the maintenance of a summary proceeding to

recover possession of real property if 'the tenant continues in possession of any portion of the

premises after the expiration of his term, without the permission of the landlord.'" *7 W. 21 LI*

*LLC v. Mosseri*, No. 20-cv-279, 2022 WL 16722105, at *2, 2022 U.S. Dist. LEXIS 201552, at *5 (S.D.N.Y. Nov. 4, 2022) (quoting N.Y. Real Prop. Acts. Law § 711(1)). As Plaintiff is alleged to be the tenant, she does not appear to have a cause of action under this provision. Accordingly, this claim is dismissed for failure to state a claim.

### 7.      Defendant Jean Doe 1–20

Dismissal is appropriate for defendants who are listed in the caption "but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Burrardi*, No. 06-cv-0889, 2007 WL 607341, at *1, 2007 U.S. Dist. LEXIS 11727, at *2 (N.D.N.Y. Feb. 20, 2007). The Court therefore dismisses Defendant Jean Doe 1–20, who are not referred to at all in the body of the Amended Complaint.

### D.      Leave to Amend

Plaintiff's claim for damages under Title III of the ADA, claims against the individual Defendants under the Rehabilitation Act, and ADA retaliation and interference claims against the individual Defendants are dismissed without leave to replead, as repleading would be futile. However, in light of Plaintiff's pro se status, the Court will give Plaintiff an opportunity to amend the complaint with respect to her: (1) claims of constitutional violation under 42 U.S.C. § 1983 and the New York State constitution; (2) conspiracy claim under 42 U.S.C. § 1985; (3) Title III, ADA disability discrimination and reasonable accommodation claims against Defendants Ahmed Alloush and Yunis Alloush; (4) race and religion-based claims under the FHA and NYSHRL; (5) Article 7 of the New York Property Actions and Proceedings Law; and (6) claims against Defendant Jean Doe 1–20. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

To the extent Plaintiff seeks to amend the complaint, Plaintiff must allege facts showing what any named defendant, including any Jane Doe or John Doe defendant, did to violate her rights.

Finally, Plaintiff is advised that an amended complaint will completely replace the original complaint in this action, and render the original complaint "of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Any amended complaint must therefore include all of the allegations against each of the defendants so that it may stand alone as the sole complaint in this action. Any amended complaint filed by Plaintiff must bear her original signature, and must be a complete pleading which will supersede and replace the amended complaint in its entirety.

Plaintiff must name one or more defendants, and must set forth a short and plain statement of the facts she relies on in support of his claim that the individual named as a defendant engaged in misconduct or wrongdoing that violated Plaintiff's constitutional rights.

Plaintiff is forewarned that, if she does not submit an amended complaint within thirty (30) days of the filing date of this Memorandum-Decision and Order, the Amended Complaint will proceed with respect to the remaining claims: (1) Title III, ADA disability discrimination and reasonable accommodation claims under Title III against the YWCA, Siciliano, and Rayne; (2) ADA and Rehabilitation Act retaliation and interference claims against the YWCA; (3) Plaintiff's FHA and NYSHRL disability and sex-based discrimination, hostile housing environment, and retaliation claims against all Defendants; and (4) Plaintiff's claim under N.Y. Real Property Law § 223-b(5) against all Defendants.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for leave to proceed IFP (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's (1) claims of constitutional violation under 42 U.S.C. § 1983 and the New York State constitution; (2) conspiracy claim under 42 U.S.C. § 1985; (3) ADA claims against Defendants Ahmed Alloush and Yunis Alloush; (4) race and religion-based claims under the FHA and NYSHRL; (5) claims under Article 7 of the New York Real Property Actions and Proceedings Law; and (6) claims against Defendant Jean Doe 1–20 are **DISMISSED without prejudice to repleading**; and it is further

**ORDERED** that Plaintiff's claim for monetary damages under Title III of the ADA; Plaintiff's Rehabilitation Act claims against Siciliano, Rayne, Ahmed Alloush, and Yunis Alloush; and Plaintiff's ADA retaliation claims against Siciliano, Rayne, Ahmed Alloush, and Yunis Alloush are **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk shall issue summonses for Defendants YWCA, Siciliano, Rayne, Ahmed Alloush, and Yunis Alloush and forward the summonses, along with copies of the Amended Complaint, (Dkt. No. 23), and this Memorandum-Decision and Order, to the United States Marshal for service upon Defendants. Defendants shall file a response to the Amended Complaint as provided for in Rule 12 of the Federal Rules of Civil Procedure.[8] And it is further

**ORDERED** that any amended complaint, as discussed herein, must be filed **within thirty (30) days** of the filing of this Memorandum-Decision and Order; and it is further

---

[8] The deadline the Court previously set for an answer or response to the Amended Complaint, (*see* Dkt. No. 40 (Text Order)), is vacated in light of this Memorandum-Decision and Order.

**ORDERED** that, if Plaintiff timely files an amended complaint, this matter be referred to Magistrate Judge Evangelista for review; and it is further

**ORDERED** that the Clerk serve a copy of this Memorandum-Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>February 27, 2025</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge